## GAYLE, *et al.* v. MARTIN, *et al.*

1. A boat being libelled and seized, subsequent to the decree of condemnation and order of sale, a third person interposed as claimant, and executed a bond for the prosecution of a writ of error—Held, that the bond had no other effect than to arrest proceedings until the judgment of the appellate Court was rendered, and upon the affirmance of the decree, it was competent to execute the order of sale. This being the case, a bond subsequently executed to the libellants, in consideration of relinquishing their lien, conditioned to pay the judgments in their favor, should they not be reversed, is good as a common law obligation.

2. A bond to a number of obligees, conditioned to pay several and distinct judgments in favor of each, must be sued in the name of all the obligees, or the survivors of them, upon the principle, that they in whom the legal interest is vested, must join in an action at law.

THE defendants in error, brought an action of debt, against the plaintiffs, on a penal bond in the sum of one thousand dollars.

The defendants demurred to the declaration, and their demurrer was sustained. Thereupon, the plaintiffs filed an amended declaration, which was also demurred to. The amended declaration sets out, that the plaintiffs, on the 23d of October, 1838, commenced a suit by libel, in the County Court of Dallas, against the steam-boat Fox, her tackle, apparel and furniture, upon which such proceedings were had, that the boat was seized by the sheriff of that county. It is then averred, that at the December term, 1838, of the County Court, all the plaintiffs, with the exception of two, recovered several judgments for the amounts respectively due to them, and that the boat was condemned to their satisfaction—(the amount of each of these judgments is particularly stated;) and it was ordered by the Court, that a commission issue to the sheriff of Dallas, to expose the boat, her tackle, apparel and furniture, to public sale. It is further alleged that on the 19th of February, 1839, one James Read, having put in a claim to the boat, and been made a party, to the record in the cause by order of the Judge of the County Court, executed a writ of error bond, and sued out a writ of error returnable to the June term, 1839, of the Supreme Court, thereby superseding the judgment, order and sale. And afterwards, on the 23d of March, 1839, the defendants, with the consent of the libellants, executed a writing obligatory, by which they acknowledged themselves held, and firmly bound unto the plaintiffs, in the penal sum of one thousand dollars, for the payment of which, well and truly to be made, they bound themselves, their heirs, executors. &c. jointly and severally, &c. conditioned, that whereas, there had been an attachment at the suit of said libellants, levied on the steam-boat Fox, which attachment was founded on the libel of said obligees and libellants, filed in the county court of said county, (meaning and referring to the suit aforesaid,) and the said Geo. W. Gayle for, and on behalf of the owners of said boat, claiming the sume, and for the purpose of replevying the same, bound himself as above: now if the said George W. Gayle, should well and truly pay such judgments as should thereafter be rendered on said libel, or such judgments as had already been rendered on said libel (meaning the judgments

aforesaid) in case the same should not be reversed, then that obligation to be void, else to remain in full force and effect. It is then averred, that in consequence of the execution of the writing obligatory, George W. Gayle, did then and there, receive the boat into his care, and under his control, and has not re-delivered, but has sold and disposed of the same. It is also alleged, that the matters set forth in said writing obligatory, mean, and refer to the plaintiff's libel against the steam-boat Fox, and the proceedings therein as above in this declaration stated.

The declaration then alleges the non-payment of the judgments in favor of the plaintiffs, although they still remain in full force; the writ of error to the Supreme Court having been dismissed by the judgment of that Court, and concludes in usual form.

After the overruling of their demurrer, to the amended declaration, the defendants, with the consent of the plaintiffs, pleaded informally, as follows:

1. That there was no such record of recovery in the said County Court, as in said declaration, and amended declaration, alleged.

2. That there is no record of said dismissal of said Supreme Court.

3. To the said amended declaration, that said writing obligatory declared on, was not made and executed by consent of the libellants, as in said declaration mentioned.

4. There never has been any demand made of the boat, her tackle, apparel and furniture.

The plaintiffs took issue on the first, second and third pleas, and demurred to the fourth. The demurrer was sustained, and judgment on the first and second pleas given for the plaintiffs; and the issue of fact being tried by a jury, a verdict was returned for the plaintiffs, and judgment thereupon rendered. To revise the judgment of the Circuit Court, a writ of error has been prosecuted to this Court.

PECK & CLARK, for the plaintiffs in error contended,

1. The bond on which the plaintiffs declared did not appear to have been founded on any legal consideration.

2. That a joint action cannot be sustained on the bond by all

the obligees; each obligee should have sued to recover the damages to which he was entitled. 1 Chitty's Plead. 9 ; 2 Saund. Rep. 116, note 2.

3. The bond must be regarded as separate and several, as it respects each obligee, for if joint, one could release the action to the injury of all. Eastman, *et al.* v. Wright, *et al.* 6 Pick. Rep. 316, 322, 323. And if a joint action is allowed, the defendants would be denied the right of set-off against any number of the obligees less than all; besides the plaintiffs have interests, separate and distinct, and not joint.

4. The obligees should have severed in the assignment of a breach.

Edwards, for the defendant, insisted—that the proceeding against the boat, being *in rem*, the writ of error bond did not require its return to the claimant, but merely superseded the order of sale. But admitting the law to be otherwise, the bond was voluntarily executed, for a consideration, not illegal, and was good at common law. Aik. Dig. 390; Acts of 1836, page 24; 21 Wend. Rep. 605; 5 ibid. 287; 3 Mass. Rep. 304; 5 ibid, 315; 2 Porter's Rep. 493; 5 Porter's Rep. 251; 6 Porter's Rep. 419.

The plaintiffs could not maintain separate actions of debt on the bond; whether each could sue in covenant on the condition, is another question. Here, the action is on the bond, and the breaches of the condition are alleged under the statute. The obligees have the legal interest and all must join. 9 Wend. Rep. 236; 12 ibid. 156; 1 B. & Pul. Rep. 72; 1 East' Rep. 500; 1 Chitty's Plead. 3, 4, 5, 6, 7, 8, 9. The breach follows the terms of the condition, and is consequently good.

COLLIER, C. J.—It is unnecessary to consider whether a bond, which appears on its face to be merely gratuitous, can be recovered by the obligee, as the bond declared on, appears to be founded upon a sufficient legal consideration. The libel against the steam-boat, in its effect, is unlike an ordinary action at law; by the seizure of the boat, the libellants acquired a specific lien upon it, which could only be discharged by the execution of a stipulation, such as the statutes, giving this extraordinary remedy, prescribe. 5 Porter's Rep. 251, Richardson, *et al.* v. Cleaveland & Huggins. The interven-

tion of Read, as a claimant, subseqent to the decree of condemnation, and consequent order of sale, and the simultaneous execution of a writ of error bond by him, had no other effect than to arrest the proceedings until the judgment of this Court should be rendered; upon the decree being affirmed, it was entirely competent for the sheriff to proceed to execute the order of the County Court. This being the case, we can conceive of no legal impropriety on the part of the libellants, in consenting, as it alleged they did, to relinquish their lien upon the boat, upon receiving a bond, conditioned to pay their judgments, should they not be reversed by this Court; and the consideration which the obligors received for their undertaking, being the delivery of the boat, without reference to its value, is sufficient to sustain it. There is no law which inhibits the taking of such a bond, nor is it opposed to any principle of policy, and it must consequently be good as a common law obligation.

It is insisted, that the action is improperly brought; that as the judgments are several, in favor of each of the obligees who recovered, so each should sue for himself, assigning as a breach, the non-payment of his judgment. In general, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the *legal interest* in such contract is vested. 1 Chitty's Plead. 3, and cases there cited. Under the influence of this rule, it has been held, that an action on a bond, can be maintained at common law, only by the obligee or his legal representatives. 4 Petersd. Ab. d.593, 634. And a bond given to one person for the benefit of another cannot be sued in the name of the latter. Sanford v. Sanford, 2 Day's Rep. 559; Sanders v. Filley, 12 Pick. Rep. 554. So it is also laid down, that all the obligees must join in the suit, and upon the death of one of them, the survivors alone can sue thereon, even though the bond is conditioned for payment to the deceased party, and the survivors have no interest in the sum contained in the condition. Hurlstone on Bonds, 96; 9 vol. L. Lib.; see also, Moller v. Lambert, 2 Camp. Rep. 548. It has been also said, that a release, by one of several joint obligees, will operate as a bar to all, while it has been held, that a third person, for whose benefit a bond is given, cannot even release the demand. Hurlstone on Bonds, 97. 1 Chitty's Plead. 4, and cases cited.

We have stated these principles, that it may be seen how strict the law is in requiring all the obligees in a bond, even without reference to their interest, to join in the prosecution of a suit against the obligors. Their right to join, is wholly disconnected with their right to release the cause of action, and depends exclusively upon the question whether the *legal interest* is in them. The undertaking is to pay all the obligees, *eo nomine,* and this is conclusive to show to whom the obligation is given. The case of Austin and others v. Hall, 13 Johns. Rep. 286, shows, that though a plaintiff may release to the prejudice of his co-plaintiffs, if the legal interest is in him, he must be joined in the action.

As the present case does not require us to consider the right of one obligee, where they are several, to release the bond, or of one plaintiff, where there are more, to discharge the action, we purposely decline expressing any opinion on these points.

The declaration then, is substantially good, and the cause of action, stated with sufficient precision, although this is done in more words than need have been employed, yet its verbosity was induced *ex abundanti contela;* and does not prejudice. It is not insisted, that the demurrer to the fourth plea, should have been overrulod, nor indeed could it be with success; the condition of the bond not making a demand of the boat necessary, nor even contemplating its return.

From a view of the entire case, we are of opinion, that the judgment of the Circuit Court must be affirmed.